UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AARON AMBULANCE MEDICAL TRANSPORTATION, INC., and JOSEPH THOMAS,<br><br>                Plaintiffs,<br>    v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON (erroneously sued herein as "HISCOX INSURANCE"),<br><br>                Defendant. | Action No. 16-cv-04564 (CLW)<br><br>**OPINION** |

**THIS MATTER** comes before the Court on the motion for judgment on the pleadings filed by Certain Underwriters at Lloyd's, London's (Defendant or Underwriters) and Plaintiffs' opposition thereto. Having considered the parties' submissions and heard oral argument, the Court grants Defendant's motion for the reasons set forth below.

**I.     Background**

This case concerns a professional liability insurance policy (the Policy), as well as a particular provision (Endorsement 7) covering claims arising out of sexual misconduct, purchased by Plaintiffs from Hiscox and effective with Underwriters. (Compl., ECF No. 1-1, at 3-4; Notice of Removal, ECF No. 1, ¶¶ 4-5; Policy, ECF No. 1-2, at 1, 16.)[1] In 2015, Plaintiffs were sued in relation to alleged sexual harassment and discrimination. (Compl., ¶¶ 2-3; Rodriguez Compl., ECF No. 1-3.) The plaintiff in the underlying action was employed by Plaintiffs herein from August 2013 to May 2014 as a receptionist and administrative assistant, after which time she "was forced to resign" because "she was subjected to continuous sexual harassment and abuse at the

---

[1] References use page numbers assigned by CM/ECF.

Hackensack and Lyndhurst office by" Plaintiffs herein. (Rodriguez Compl., Count I, ¶¶ 4-9.) She also alleges that "sexually offensive conduct and remarks were made to ridicule and to humiliate [her] and to cause her infliction of emotional distress." (Id., ¶ 12.) The plaintiff in the underlying action thereby asserted numerous counts concerning or claiming, *inter alia*, "sexual harassment and discrimination[,]" "verbal and physical assaults and batteries and offensive physical contact[,]" "intentional and/or negligent infliction of emotional distress[,]" a "hostile work environment[,]" and constructive discharge. (Id., Count I, ¶ 43; Count II, ¶¶ 2-7; Count III, ¶¶ 2-3; Count VII, ¶ 4; Count VIII, ¶ 4; Count X, ¶¶ 4-6; Count XI, ¶¶ 2-4; Count XII, ¶¶ 2-5.)

Plaintiffs notified Defendant of the suit, but the latter advised that the suit was not covered by the Policy. (Compl., ¶¶ 4-6.) Consequently, in this removal action Plaintiffs allege via a single count for declaratory judgment that Defendant wrongfully denied a duty to defend and indemnify and seek declarations regarding the same, while Defendants "contend that coverage under the Professional Liability and General Liability coverage of the Policy has not been triggered by the Underlying Lawsuit and/or that such coverage as might otherwise be available is precluded by operation of the terms and provisions of the Policy." (Notice of Removal, ¶¶ 8-12; Compl., ¶¶ 6-10.)

Defendant now moves for judgment on the pleadings, arguing that because Plaintiffs purchased a professional services liability policy that covers claims arising from the performance of ambulance services, there is no coverage for suits concerning sexual harassment in the workplace. (Motion, ECF No. 15.) In opposition, Plaintiffs cite the separately-purchased Endorsement 7 as providing the basis for coverage of the underlying action and otherwise maintain that the language of Endorsement 7 created a reasonable expectation of coverage and that it creates ambiguity such that it should be construed in Plaintiffs' favor. (Opp., ECF No. 17.)

**II.     Standard**

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The movant must clearly show that there is "no material issue of fact and that he is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)) (internal quotations and citations omitted). A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). Turbe v. Government of the Virgin Islands, 938 F.2d 427, 427 (3d Cir. 1991). The Court is therefore required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 306 (3d Cir. 2007). Beyond the face of the pleadings, the Court may consider exhibits attached to the complaint, matters of public record, and undisputedly authentic documents attached in a defendant's motion if the plaintiff's claims are based upon it. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.3d 1192, 1196 (3d Cir. 1993). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Mele v. Federal Reserve Bank of N.Y., 359 F.3d 251, 256 n.5 (3d Cir. 2004) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).

**III.     The Policy**

The Court now outlines the pertinent Policy provisions for the disposition of the instant motion. The crux of the Policy is as follows:

> **I. Insuring Agreement**
>
> Underwriters will pay on behalf of the **Insured** all **Damages** and **Claim Expenses** in excess of the Deductible and subject to the applicable Limit of Liability that the **Insured** becomes legally obligated to pay as a result of any covered **Claim** that is first made against the **Insured** during the **Policy Period** or during any properly exercised and applicable **Extended Reporting Period**, for any **Wrongful Act** by the **Insured** or by anyone for whom the **Insured** is legally responsible, provided, however, that such **Wrongful Act** was committed or allegedly committed on or after the **Retroactive Date** set forth in Item 8. of the Declarations and further provided that the **Insured** had no knowledge of the actual or alleged **Wrongful Act** prior to the inception date of this Policy or if this is a renewal policy issued by the Underwriters, as of the inception date of the initial policy issued to the **Insured** by Underwriters.

(Policy, ECF No. 1-2, at 30.)[2] The Professional Liability Supplemental Declarations provide that

the Policy applies to:

> 1. Named Insured:        Aaron Medical Transportation, Inc.
> 3. Professional Services:   Solely in the performance of emergency/non-emergency services as an ambulance.

(Policy, ECF No. 1-2, at 3.) The Policy, however, sets forth certain exclusions:

> **IV. Exclusions**
>
> This Policy does not apply to any **Claim**:
>
> B. based upon or arising out any actual or alleged unlawful discrimination by any **Insured**, including but not limited to any actual or alleged violations of federal, state, or municipal statutes, regulations, rules, or ordinances;
>
> C. based upon or arising out of **Bodily Injury**, of any **Employee**, **Leased Worker** or **Volunteer Worker** of the **Insured** arising out of and in the course of employment by the **Insured**;
>
> E. based upon or arising out of any sexual misconduct, sexual abuse, and/or child abuse;

---

[2] Emphasis as used in the Policy is retained throughout.

4

I. brought by one Insured or Affiliate against another Insured or Affiliate[.]

(Policy, ECF No. 1-2, at 31-32.) In addition, the Policy is guided by the following definitions:

**V. Definitions**

C. **Bodily Injury** means physical injury, sickness, disease or death of a person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by a person resulting therefrom.

D. **Claim** means any notice received by the **Insured** of a demand for **Damages** or for nonmonetary relief based on any actual or alleged **Wrongful Act** whether or not the nature or extent of the **Damages** or non-monetary relief is known or asserted at the time of receipt of any notice.

G. **Employee** means any person who has been hired by the **Named Insured** to perform services, who has an assigned work schedule, and appears on the regular payroll of the **Named Insured** with applicable federal, state and local taxes withheld. Employee does not include independent contractors.

H. **Insured** means any of the following:

1. the **Named Insured**;
2. any past, present or future partner, director, officer, member, department head, chief of staff, board member, **Employee**, **Leased Worker** or **Volunteer Worker**, solely while acting within the scope of his/her duties as such;

L. **Named Insured** means the individual, corporation, partnership, limited liability company, limited partnership, or other entity named in Item 1. of the Declarations.

P. **Professional Services** means only those services set forth in Item 3. of the Declarations, as performed by or on behalf of the **Named Insured**.

T. **Wrongful Act** means any actual or alleged negligent act, error, omission, breach of duty, **Bodily Injury** or **Personal Injury** committed or alleged to have been committed solely in the performance of the **Professional Services** as shown in Item 3. of the Declarations.

(Policy, ECF No. 1-2, at 32-33.)

And, of particular import here, Endorsement 7 provides:

**Endorsement 7**

NAMED INSURED: Aaron Medical Transportation, Inc

**E802.2 Sexual Misconduct Sub-Limit (PL)**

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE PART**

In consideration of the premium charged, it is understood and agreed that the section of the Policy entitled IV. Exclusions, Part E. is deleted in its entirety.

It is further understood and agreed that a Limit of Liability of $100,000 each **Claim** and $300,000 in the Aggregate, including **Damages, Claim Expenses** and **Supplemental Payments**, shall apply with regard to any **Claim(s)**, in whole or in part, based upon, or arising out of any sexual misconduct, sexual abuse, and/or child abuse.

The Limit of Liability set forth in this endorsement shall be part of, and not in addition to, the Limit of Liability of this Policy stated in Item 4. of the Declarations.

All other terms and conditions remain unchanged.

(Policy, ECF No. 1-2, at 16.)

**IV.     The Parties' Arguments**

By reference to the terms of the Policy, Defendant offers the following interpretation: the Policy applied from the outset only to professional services; the main body of the Policy initially precluded coverage for sexual misconduct in the context of rendering professional services; Endorsement 7 expanded the scope of coverage to include such sexual misconduct; the sexual harassment allegations in the underlying action are not covered pursuant to the exclusion for unlawful discrimination and, further, are not the type of claims contemplated by Endorsement 7, which instead would cover claims such as sexual abuse by an emergency medical technician

against an ambulance patient; the Policy disclaims coverage for claims based upon bodily injury, which is alleged in the underlying complaint; the Policy also disclaims coverage for claims made by one insured against another, as is the case here; the Policy is clear and unambiguous and thus should be interpreted according to its terms such that judgment is granted in Defendant's favor. (Motion, ECF No. 15-1.)

Plaintiffs read Endorsement 7 differently, and argue that the allegations in the underlying complaint fall squarely within "sexual misconduct, sexual abuse, and/or child abuse." (Opp., ECF No. 17, at 9-13.) In the alternative, Plaintiffs contend that the amendments and conflicting terms in the Policy resulted in a reasonable expectation of coverage and that any ambiguity should be construed in Plaintiffs' favor. (Id.)

**V. Discussion**

With the parties concurring that New Jersey law governs here, Motion, ECF No. 15-1, at 12; Opp., ECF No. 17, at 8, a few well-established principles inform the Court's analysis. First, the scope of an insurance contract's coverage is a question of law properly decided by the Court. Cnty. Of Gloucester v. Princeton Ins. Co., 317 F. App'x 156, 159 (3d Cir. 2008); Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts & Youngs, P.C., 821 F.2d 216, 219 (3d Cir. 1987). The Court accordingly compares the allegations in the complaint with the language of the insurance policy and the Court is guided by the plain language of the policy such that, if the terms are clear then they are given their plain, ordinary meaning. Flomerfelt v. Cardiello, 202 N.J. 432, 444 (2010); Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001). Importantly, the Court "should interpret the policy as written and avoid writing a better insurance policy than the one purchased." President v. Jenkins, 180 N.J. 550, 562 (2004) (citing Gibson v. Callaghan, 158 N.J. 662, 670 (1999)). "When there is ambiguity in an insurance contract, courts interpret the contract

to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." Zacarias, 168 N.J. at 595 (citing Gibson, 158 N.J. at 671). And a genuine ambiguity only exists "where the phrasing of the policy is so confusing that an average policyholder cannot make out the boundaries of coverage." Id., at 598; Argent v. Brady, 386 N.J. Super. 343, 352 (App.Div. 2006).

The Court understands Plaintiffs' concern for clarity in reading the Policy, particularly regarding the role of endorsements in modifying the main body of the Policy. However, a plain reading of the Policy supports the interpretation offered by Defendants. First, when read in conjunction, the Insuring Agreement, Exclusions, and Definitions clearly demonstrate the following: the Policy insured Plaintiffs as well as their former employee, the plaintiff in the underlying action. In addition, the Policy covered wrongful acts committed in the performance of professional services, with coverage excluded for such acts as sexual misconduct, discrimination, bodily injury (including mental anguish and emotional distress), and those claims arising between insureds. Thus, because the underlying action presents claims brought by one insured against another premised upon sexual assault, discrimination, emotional distress, and wrongful termination, the Policy plainly disclaims the coverage sought by Plaintiffs.

Moreover, there is no basis in the Policy terms to conclude that the actions alleged in the underlying complaint occurred in the "performance of emergency/non-emergency services as an ambulance[.]" Rather, the underlying events allegedly occurred between employees in company offices. On this point, the Court endorses Defendant's distinction that the Policy is one that provides professional liability insurance, as opposed to employment practices liability insurance, and that the underlying allegations do not arise out of the rendering of professional services. See Motion, ECF No. 15-1, at 13-16; Reply, ECF No. 18, at 4. That is, New Jersey law distinguishes

professional liability policies from other policies because, for example, professional services that entail specialized learning specific to a profession are distinguishable from business or commercial activities such as billing practices. See Hampton Med. Grp., P.A. v. Princeton Ins. Co., 840 A.2d 915, 923-25 (App. Div. 2004) (collecting cases); Dibeneditto v. Med. Protective Co., 3 F.App'x 483, 484-87 (6th Cir. 2001) (concluding that, under state law, the "case did not relate to the rendering of professional services, because it bore no connection to his education and training as a physician" where employees brought suit sexual harassment claims "based solely on acts relating to their employment").

Critically, insofar as Endorsement 7 deletes the exclusion of claims arising out of "sexual misconduct, sexual abuse, and/or child abuse," there is no language to negate the other clear disclaimers of coverage because the terms of Endorsement 7 make clear only that "IV. Exclusions, Part E. is deleted in its entirety." Absent express reference to other provisions of the Policy, the Court is disinclined to construe the Policy as expansively as Plaintiffs suggest. It would be a generous interpretation indeed to read Endorsement 7 to expand coverage beyond professional services and into the realm of sexual harassment and discrimination—all without using or defining such terms or referring to related definitions, declarations, or exclusions. A plain reading, rather, recognizes that the Policy says what it means through well-defined and consistently-employed terms. Such a reading also supports the conclusion that, as Defendant persuasively argues, sexual misconduct is insured against not in the sense of sexual harassment or in the context of an office environment, but simply in rendering professional ambulatory services—a situation not raised by the allegations of the underlying complaint. Without further guidance from the express terms of the Policy, therefore, there is no reasonable basis to find ambiguity or an expectation of coverage.

The interpretation adopted here gives effect to all terms of the Policy, avoids rendering any provision a nullity, and further avoids creating a better policy than the one purchased.

In short, Plaintiffs availed themselves of an insurance broker to insure a commercial enterprise and secured insurance coverage for clearly-defined circumstances. Plaintiffs did not secure coverage for every eventuality, however, as the Policy unambiguously excludes coverage for claims presented in the underlying complaint. And Endorsement 7, while expanding the scope of some coverage, changes nothing in the interpretive calculus with respect to the coverage sought here. The Court, therefore, concludes that the complaint in the instant matter, read in conjunction with the Policy and the complaint in the underlying matter, cannot be reasonably construed in the manner Plaintiffs suggest. Defendant's motion is granted. An appropriate Order follows.

Dated: September 14, 2017

*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**